IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAY BRONNER,

          Plaintiff,

   v.

SAN FRANCISCO SUPERIOR COURT, *et al.*,

          Defendants.
                                    /

No. C 09-5001 SI

**ORDER GRANTING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

Defendants have moved to dismiss the complaint. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument and the hearing scheduled for July 2, 2010 is VACATED . For the reasons set forth below, the Court GRANTS the motion to dismiss by defendant City and County of San Francisco (CCSF), and DISMISSES defendants Collins, Helland and Kiesnowski.

## BACKGROUND

The facts underlying this lawsuit are detailed in the Court's March 8, 2010 Order granting defendants' motions to dismiss with leave to amend. [Docket No. 70]. In that Order, the Court dismissed the claims against the City and County of San Francisco ("CCSF") and the individual defendants, but granted plaintiff Ray Bronner leave to amend.[1] Thereafter, on March 12, 2010, the Court granted plaintiff's request to dismiss his claims against the individual defendants without prejudice, and gave plaintiff until April 19, 2010 to file his First Amended Complaint.[2] [Docket No. 74].

---

[1] As the Eleventh Amendment barred plaintiff's claim against defendant San Francisco Superior Court, the Court dismissed that claim without leave to amend.

[2] At that time plaintiff indicated his intention to pursue his claims against the individual defendants in state court.

Plaintiff filed his First Amended Complaint ("FAC") on April 19, 2010. The FAC asserts claims against defendant CCSF and against Charles Michael Collins, Patrick Helland, and Diane Kiesnowski, three of the previously-dismissed individual defendants. All four defendants have filed motions to dismiss.[3]

**LEGAL STANDARD**

**1. Motion to dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

[3] On June 4, 2010, plaintiff filed a request for leave to file a supplemental memorandum regarding the standard of review on a motion to dismiss, and a request for an extension of time to file his opposition brief. [Docket No. 87]. The Court did not grant plaintiff's request for an extension of time, but plaintiff nonetheless filed his opposition brief five days late. [Docket No. 93, filed 6/16/2010]. CCSF objects to the late filing. In the interest of having a full and complete record in this case, the Court GRANTS plaintiff's request to file the supplemental brief and the Court will consider plaintiff's opposition brief. CCSF also objects to plaintiff's filing of a sur-reply without leave of court on June 28, 2010 [Docket No. 104]. The Court admonishes plaintiff that even *pro se* litigants are required to comply with this Court's Local Rules. However, for the interest identified above, the Court will accept plaintiff's sur-reply. Plaintiff's requests for a TRO and default are DENIED. [Docket No. 86]

Even though *pro se* pleadings should be construed liberally, they must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). There are several accepted reasons to deny leave to amend, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and that the plaintiff has previously amended the complaint. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988).

## 2. Section 1983 claims

"Traditionally, the requirements for relief under § 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) ; *see also Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (in any "§ 1983 case, [plaintiff] must show that the alleged violation was proximately caused by . . . the state actor.").

Because municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit. *See Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). The Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality . . . has caused an employee to [violate plaintiff's

constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.

A plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Navarro v. Block*, 72 F.3d 712, 714-15 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). Allegations of random acts, or single instances of misconduct, however, are insufficient to establish a municipal custom. *See Navarro*, 72 F.3d at 714; *Thompson*, 885 F.2d at 1444.

The plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. *See Harris*, 489 U.S. at 388-91; *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008); *see also Brown*, 520 U.S. at 409-10 (discussing limited scope of such a claim). Such a showing depends on three elements: (1) the training program must be inadequate "'in relation to the tasks the particular officers must perform'"; (2) the city officials must have been deliberately indifferent "'to the rights of persons with whom the [local officials] come into contact'"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted).

**DISCUSSION**

**1.      Plaintiff's claims against the individual defendants**

Pursuant to plaintiff's request, on March 12, 2010 the Court issued an order dismissing the individual defendants. Nevertheless, three of the former individual defendants – Charles Michael Collins, Patrick Helland, and Diane Kiesnowski – were again named as defendants in the FAC. These defendants have filed motions to dismiss. [Docket Nos. 82, 83, 84]. Plaintiff Bronner responded to the individual defendants' motions to dismiss with requests for an order to show cause and entry of default, and motions for a temporary restraining order and to strike. [Docket No. 86].

4

The individual defendants were dismissed from this case – at plaintiff's request (*see* Docket No. 71) – after the Court ruled on the prior motions to dismiss. Plaintiff neither sought nor obtained leave to Court to add them back into the action, and his apparent effort to do so without leave is ineffective. *See* Fed. R. Civ. Proc. 15(a)(2) (leave of court is required to amend after the 21 day period under Rule 15(a)(1) passes). Accordingly, defendants Collins, Helland and Kiesnowski are DISMISSED. The only defendant remaining in this case is CCSF.

**2.  Plaintiff's claims against CCSF**

Plaintiff's original complaint contained one § 1983 cause of action against CCSF. The Court dismissed that claim, but allowed plaintiff to amend "to specifically identify the 'policy' or 'custom' he is challenging, and specifically allege how that policy or custom deprived him of his constitutional rights." March 8, 2010 Order at 5. In the FAC, plaintiff has alleged three § 1983 causes of action against CCSF. FAC at 8-18. The Court will address plaintiff's amended claims in reverse order.

**A.  Plaintiff's third § 1983 claim against CCSF**

Amended "count three" alleges a § 1983 violation based on "deprivations of property & liberty without due process or equal protection of the laws owing to Cimex, inadequate doors & locks, & other health & safety hazards caused by a custom or policy of failing to supervise, train, hire and/or discipline." FAC at 15. The crux of this claim is plaintiff's allegation that CCSF ignores dangerous housing conditions and public health hazards, in favor of high-profile health and safety abatement cases. Plaintiff alleges that his reasonable expectation of privacy in his person and things was violated. FAC ¶ 45.

To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived him of a constitutionally protected life, liberty or property interest. *See Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). However, the due process clause does not require the state to "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v.*

*Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). Consequently, the state's failure to protect an individual from "harms inflicted by persons not acting under color of law" will not ordinarily give rise to § 1983 liability. *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998).

For the reasons noted above, courts generally have declined to hold municipalities liable for failure to enforce building and zoning code violations. *See, e.g., Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (rejecting due process claim based on municipalities' alleged failure to enforce zoning laws). For example, in *Assoko v. City of New York*, 539 F. Supp.2d 728 (S.D.N.Y. 2008), the Court held that a city charter which outlined the functions and responsibilities of the city's code enforcement department, "does not impose a non-discretionary duty to perform a certain number or quality of inspections, or enforce each and every building regulation and provision in any particular way. Under Plaintiffs' logic, each time an agency, whose duties are defined in the Charter, fails to satisfy an obligation or improperly undertakes a responsibility, it constitutes a due process claim. The Constitution does not support such an invasion of the daily workings of elected officials and administrative agencies. Instead, '[g]overnment officials … generally are given broad discretion in their decisions whether to undertake enforcement actions.' *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir.1994)." *Id.*, at 738.

There are two exceptions to the general rule that a state's failure to protect an individual from harms by non-governmental actors will not ordinarily give rise to § 1983 liability: (1) the "special relationship" exception; and (2) the "danger creation exception." *See Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). When the state has "created a special relationship with a person, as in the case of custody or involuntary hospitalization," courts have imposed liability "premised on an abuse of that special relationship." *L. W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992). The danger creation exception requires affirmative conduct on the part of the state, creating a danger that the plaintiff would not have otherwise faced. *Johnson*, 474 F.3d at 641. Neither of these exceptions applies in this case.

For example, there are no indications that a "special relationship" created by state law exists

6

between plaintiff and CCSF. Likewise, there are no indications that CCSF's affirmative actions placed plaintiff's liberty or property in more danger than existed simply as a result of the existing circumstances at plaintiff's former rental property. Plaintiff's reliance on *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) (as amended), for the proposition that a § 1983 claim can be stated where government defendants are alleged to have acted with deliberate indifference to a plaintiff's safety is misplaced in light of the Supreme Court's holding in *DeShaney* and subsequent Ninth Circuit cases. *See, e.g., Johnson*, 474 F.3d at 641.[4]

Nor has plaintiff alleged any facts which would support an equal protection claim. He does not allege that CCSF discriminated against him on the basis of his actual or perceived inclusion in a protected class.[5] To the contrary, plaintiff affirmatively alleges that CCSF *routinely* fails to enforce low-profile housing and public health code violations.[6]

As plaintiff has failed to state a due process or equal protection claim, plaintiff's third claim is DISMISSED. As the authority cited by the Court holds that plaintiff cannot sue CCSF for its alleged failure to enforce building or housing code violations, and plaintiff has failed in his initial complaint and the FAC to allege facts showing that either exception to the general rule applies or that there is any basis for an equal protection claim, the Court does not grant plaintiff leave to amend this claim.

### B. Plaintiff's second § 1983 claim against CCSF

Amended "count two" alleges a § 1983 violation based on "infringement of the rights to

---

[4] The language plaintiff cites from *Balistreri*, *see* Sur-Reply [Docket No. 104] at 4, does not appear in the final, amended decision from the *Balistreri* panel following the United State Supreme Court's decision in *DeShaney*. *See* 901 F.2d at 700 (upholding the district court's dismissal of plaintiff's due process claim for failure to state a claim).

[5] Indeed, plaintiff does not allege that he is a member of any protected class or has any particular ethnic or national heritage. Under the circumstances of this case, however, merely adding such allegations would not be sufficient to state an equal protection claim, since plaintiff affirmatively asserts that CCSF routinely treats all housing and health-code violations as his were treated.

[6] As this claim is dismissed on the basis that plaintiff cannot state a claim for CCSF's alleged failure to enforce the building and housing codes, the Court need not discuss plaintiff's continued failure to plead facts to support CCSF's liability under *Monell* for a policy or custom.

substantive due process & equal protection of the laws through the manipulation of police reports & encouragement of discriminatory threats of violence stemming from a custom or policy of failing to supervise, train, hire, and/or discipline." FAC at 11. The crux of this claim is plaintiff's allegation that a police officer failed to include in a police report derogatory statements that former defendant Patrick Helland allegedly made about plaintiff and others. FAC ¶ 34(a). Plaintiff also alleges that the police officer "openly showed personal animus" towards plaintiff through his behavior, words, tone of voice and conduct. *Id.* Plaintiff alleges that two other unidentified officers were aware of the situation but "ignored" the behavior of both Helland and the first police officer in order to protect CCSF employees. FAC ¶ 34(b).

Plaintiff alleges that this conduct was part of CCSF's "tradition" of failing to instruct, supervise, control and/or discipline employees in the performance of their duties and as a result, "affirmatively and/or tacitly allow municipal employees to encourage private individuals in the making of violent threats to, and/or unwelcome and threatening contact with government complainants and material witnesses on the basis of actual or perceived race, religion, national origin, ethnicity, and class without any follow-up reporting or discipline." FAC ¶ 34.

Plaintiff's second cause of action suffers from multiple deficiencies. Numerous courts have held that the fact that a false, incomplete or fraudulent police report has been filed is insufficient to state a § 1983 claim. *See, e.g., Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980) (the focus is on the consequences, if any, not on the mere existence of a misleading, incorrect or fraudulent report). As these cases make clear, there must be some constitutional deprivation that flows from the report. *See id.* at 744-45.

Although plaintiff identifies the allegedly false and/or inaccurate police report he complains of, plaintiff has not alleged that the report proximately caused plaintiff any constitutional deprivation. Plaintiff alleges that he was placed at a "substantially greater risk" – presumably of harassment by Helland – because the officer's failure to include the derogatory comments in the police report "fueled" Helland's behavior. FAC ¶ 34(c). He does not allege that he suffered any concrete damage or

8

additional harassment, and mere assertion of "risk" is insufficient to demonstrate either injury or constitutional deprivation. In any event, CCSF could not be held liable for violence or harassment by Helland absent evidence that CCSF undertook affirmative action to enable Helland's behavior, and thereby placed plaintiff in danger or harm. There is no evidence of affirmative action on CCSF's part. In fact, plaintiff's own evidence is that police officers actually arrested Helland as a result of the interaction that is the subject of the allegedly deficient police report. *See* Opposition at 17.

Plaintiff alleges that as a result of the inaccurate police report, he was forced to "endure thousands of hours" of litigation to obtain basic evidence that should have been in the police report. FAC ¶ 37. However, these allegations do not demonstrate a deprivation of plaintiff's right to petition or access the courts. For example, in *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995), the Court of Appeals for the Seventh Circuit dismissed a plaintiff's § 1983 claim of violation of her right of access to the courts based on police officers' false reports and failure to investigate an incident in which one of the officers, while target-shooting, shot the plaintiff. The Court noted that in order to find a violation of the right to petition or access the courts, it must be shown that the actions of the officers "prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiffs' right of access." In that case, the alleged police officer cover-up failed to achieve such ends, noting the complaint lacked any allegations claiming that the plaintiffs had been prevented from pursuing a tort action in state court or that the value of such an action has been reduced by the cover-up. *Id.* at 329.

Similarly here, while plaintiff allegedly had to spend "thousands of hours" establishing evidence that Helland made derogatory remarks – although the evidence is plaintiff's *own* testimony– there are no allegations plaintiff was *prevented* from pursing any particular claims in any court or that the value of his claims was diminished by the failure of the officer's report to indicate that Helland made derogatory remarks. The fact that a skimpy police report might have made subsequent litigation more tedious or more expensive does not constitute a constitutional deprivation.[7]

---

[7] Plaintiff's reliance on *Delew v. Wagner*, 143 F.3d 1219 (9th Cir. 1998) is misplaced. In *Delew*, although the Ninth Circuit found that allegations that police officers' cover- up of facts surrounding a death caused by another officer could violate plaintiff's access to state court, it was impossible to

9

As an independent ground for dismissal, plaintiff's second claim does not allege sufficient facts – indeed, any facts – to show CCSF had a custom or policy of failing to supervise or train its employees with respect to its police reports. Other than conclusory allegations that the City has a "tradition" of failing to supervise or train employees to ensure employees make accurate police reports, plaintiff has failed to allege any facts regarding the complained of "tradition." Plaintiff's only facts concern the one report made following his interaction with Helland, prior to Helland's arrest. As defendants point out, proof of isolated events of unconstitutional behavior by a municipal employee is insufficient to establish a municipal policy or custom. *See, e.g., McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). There are no allegations that others have had the same or similar problems, or describing deficiencies in the San Francisco police department's training program with respect to police reports. *See, e.g., Merritt,* 875 F.2d at 770.

Finally, as with his third claim, plaintiff has not alleged any facts supporting his equal protection violation. Even if (as plaintiff alleges) Helland used derogatory terms (spanning different races and heritages), that would not show that CCSF discriminated against plaintiff on the basis of his actual or perceived ethnic or national heritage. Further, plaintiff alleges that CCSF *routinely* fails to make accurate police reports.

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss plaintiff's second claim.

---

determine whether the officers' alleged cover-up violated appellants right of court access by rendering any available state court remedy ineffective because the state court case was still pending. *Id.* at 1222-23. Here, however, there are no allegations that the police officer's conduct in allegedly covering-up the behavior of a third party deprived plaintiff of any available state court remedy. *See also Swekel v. City of River Rouge*, 119 F.3d 1259, 1263-64 (6th Cir. 1997) (dismissing § 1983 claim because plaintiff failed to present evidence that defendant's actions actually rendered any available state court remedy ineffective).

### C. Plaintiff's first § 1983 claim against CCSF

Amended "count one" alleges a § 1983 violation based on "infringement of the rights of petition, procedural due process & equal protection of the laws through tampering with &/or failing to take official reports based on a custom or policy of failing to supervise, train, hire, and/or discipline." FAC at 8. The crux of this claim is plaintiff's contention that "official reports" that should have been made by CCSF employees, or ones that were made, should have included various "facts." FAC ¶ 26. Plaintiff alleges that pursuant to its "traditions," the City failed to instruct, supervise, control and/or discipline employees in the performance of their duties to refrain from falsifying reports and failing to make complete reports. FAC ¶ 26. Plaintiff alleges that he was injured as a result of the City's "traditions," that he was left "without home doors and locks meeting minimal standards required by law," that he was subjected to criminal threats and actions that injured his property and liberty, and that he was subjected to the unlawful detainer action. FAC ¶ 29.

This claim suffers from numerous deficiencies. As to the reports, plaintiff does not identify which reports should have been made, but were not; does not identify which reports were made but were deficient (*e.g.,* identify the agency who prepared the report, the date of the deficient reports, the employees involved); and does not explain the link between the list of "facts" represented by questions and answers in a deposition of Patrick Helland and the reports being complained about. FAC ¶ 26; Ex. A to FAC.

More fundamentally, however, plaintiff has failed to allege how CCSF's unspecified inaccurate or incomplete reports *proximately caused* plaintiff any constitutional deprivations. *See Phillips,* 477 F.3d at 1076. Plaintiff claims that CCSF's "traditions" in failing to instruct employees in the taking of truthful, complete and accurate reports, "paved the way for home intrusions, privacy violations, and property theft, all to plaintiff's detriment." FAC ¶ 30. However, as the facts alleged elsewhere in the FAC show, the complained of home intrusions, privacy violations and property theft were the result of third-parties' actions, not CCSF's. *See, e.g.*, FAC ¶¶ 60, 65, 76. As this Court noted above, and noted in its prior ruling, general allegations that the City has a policy of not intervening in landlord tenant

11

disputes and/or failing to enforce housing codes or criminal laws is insufficient to state a claim. *See also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (citing *Linda R.S.* and dismissing a § 1983 claim challenging a state's failure to issue arrest warrants because there was a "questionable nexus" between the alleged harm and the remedy sought). Plaintiff has not alleged anything creating an exception to the general rule that a state's failure to protect an individual from harms by non-governmental actors will not ordinarily give rise to § 1983 liability.

Additionally, plaintiff has still failed to adequately allege a *Monell* violation. Plaintiff asserts, without factual support or elaboration, that the City has a "tradition" of failing to supervise or train employees to make accurate official reports. Plaintiff complains about his own reports, but proof of isolated events of unconstitutional behavior by a municipal employees is insufficient to establish a municipal policy or custom. Plaintiff does not identify any offending training program or materials. His allegations are plainly insufficient. *Merritt,* 875 F.2d at 770.

Finally, plaintiff has not alleged any facts supporting his equal protection violation, particularly since he alleges that CCSF *routinely* fails to make accurate official reports.

For the foregoing reasons, plaintiff's first § 1983 cause of action fails to state a claim against CCSF and is DISMISSED.[8]

///

---

[8] The Court need not address plaintiff's other claims, many of which allege conspiracy between the former individual defendants and unidentified CCSF employees because the individual defendants – against whom all of the conspiracy claims were asserted – have been dismissed.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant CCSF's motion to dismiss the amended complaint. Further, the claims asserted without leave of Court against the previously dismissed individual defendants are DISMISSED.

Plaintiff has already been granted leave to amend and has not materially improved his core allegations concerning a claimed *Monell* violation. Accordingly, leave to amend is not granted.

**IT IS SO ORDERED.**

Dated: July 1, 2010

SUSAN ILLSTON
United States District Judge